UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT JENKINS and RHONDA STEPHANIE ALEXANDROPOULOS,<br><br>    Plaintiffs,<br><br>v.<br><br>BRUCE BURKEY, TAYLOR LAW FIRM PC, JOICE BASS, JENNIFER HOSTETLER and LEWIS ROCA ROTHGERBER LLP,<br><br>    Defendant. | Case No. 16-cv-792-JPG-SCW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on three motions to dismiss for lack of personal jurisdiction filed by defendants Jennifer Hostetler (Doc. 15), Lewis Roca Rothgerber LLP (n/k/a Lewis Roca Rothgerber Christie LLP; "LRRC") (Doc. 36); and Joice Bass (Doc. 39). LRRC also seeks dismissal for insufficient service of process. Plaintiff Scott Jenkins has responded to the motions (Docs. 32, 46 & 47). Plaintiff Rhonda Alexandropoulos has not responded to the motions, so under Local Rule 7.1(c) the Court finds she has admitted they have merit.

Jenkins originally filed this lawsuit in the United States District Court for the Eastern District of Missouri, which described this litigation as follows:

> This litigation arises from a prior lawsuit plaintiff Jenkins filed against his daughters in Nevada to regain control of a family-owned company in Nevada (the "Nevada Lawsuit"). In that lawsuit, Jenkins' daughters retained defendants Bass and Hostetler of the Nevada law firm Lewis Roca Rothgerber Christie LLP as their attorneys. In addition, plaintiff Jenkins' daughters retained defendant Burkey of the Taylor Law Firm, P.C. in Illinois.
> * * *
> Plaintiffs have now brought a variety of claims against the named attorneys and law firms, which all relate to the defendants' work representing their clients opposite plaintiff Jenkins in the Nevada Lawsuit. These claims include intentional infliction of emotional distress, negligent infliction of emotional distress, intentional interference with a prospective economic

advantage, defamation, negligent supervision, and breach of contract. Plaintiffs have also alleged that defendants committed fraud, fraudulent misrepresentation, conspiracy, theft, the unauthorized practice of law, illegal possession of personal credit file information, violating the Illinois Consumer Fraud and Deceptive Business Practice Act, blackmail, extortion, coercion, mail fraud, and sending threatening communications by mail. Plaintiffs also allege that defendants Bass and Hostetler illegally filed or threatened to file *lis pendens* in Illinois and Missouri.

The Eastern District of Missouri court dismissed the action for lack of personal jurisdiction over the defendants. Jenkins and Alexandropoulos have filed a very similar suit in this Court. Bass, Hostetler and LRRC now ask the Court to dismiss the plaintiffs' claims against them because they lack sufficient contacts with the state of Illinois to be brought into court here. LRRC also complains that it was not served properly.

I. **Personal Jurisdiction**

When personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If there are material facts in dispute regarding the Court's jurisdiction over a defendant, the Court must hold an evidentiary hearing at which the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id.* (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Alternatively, the Court may decide the motion to dismiss without a hearing based on the submitted written materials so long as it resolves all factual disputes in the plaintiff's favor. *Purdue Research*, 338 F.3d at 782 (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)). If the Court consults only the written materials, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Purdue Research*, 338 F.3d at 782 (citing *Hyatt*, 302 F.3d at 713). In this case, the Court consults only the written materials to determine whether Jenkins has made a *prima facie* showing of personal jurisdiction.

A federal court sitting in diversity looks to the personal jurisdiction law of the state in which the court sits to determine if it has jurisdiction. *Hyatt*, 302 F.3d at 713(citing *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992)). Thus, this Court applies Illinois law. Under Illinois law, a court has personal jurisdiction over a defendant if an Illinois statute grants personal jurisdiction and if the exercise of personal jurisdiction is permissible under the Illinois and United States constitutions. *RAR,* 107 F.3d at 1276; *Wilson v. Humphreys (Cayman), Ltd.*, 916 F.2d 1239 (7th Cir. 1990).

1. Illinois Statutory Law

Under Illinois law, the long-arm statute permits personal jurisdiction over a party to the extent allowed under the due process provisions of the Illinois and United States constitutions. 735 ILCS 5/2-209(c); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002); *Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000). Therefore, whether the Court has jurisdiction over a defendant depends on whether such jurisdiction is permitted by federal and state constitutional standards.

2. Illinois Constitutional Law

The Illinois Constitution's due process guarantee, Ill. Const. art. I, § 2, permits the assertion of personal jurisdiction "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990). When interpreting these principles, a court may look to the construction and application of the federal due process clause. *Id*. In fact, the Seventh Circuit Court of Appeals has suggested that there is no operative difference between Illinois and federal due process limits on the exercise of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d

707, 715 (7th Cir. 2002) (citing *RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997)). The Court sees nothing in this case indicating that in the situation presented the federal and state standards should reach a different result. Therefore, if the contacts between the defendants and Illinois are sufficient to satisfy the requirements of federal due process, then the requirements of both the Illinois long-arm statute and the Illinois Constitution have also been met, and no other inquiry is necessary.

        3.        <u>Federal Constitutional Law</u>

The Due Process Clause of the Fourteenth Amendment limits when a state may assert personal jurisdiction over nonresident individuals and corporations. *See Pennoyer v. Neff*, 95 U.S. 714, 733 ), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186 (1977). Under federal due process standards, a court can have personal jurisdiction over a defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The defendant must have "purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985)).

What this standard means in a particular case depends on whether the plaintiff asserts "general" or "specific" jurisdiction. Specific, or case-linked, jurisdiction refers to jurisdiction over a defendant in a suit arising out of or in connection with the defendant's purposeful contacts with the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923-24 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8, 9 (1984).

4

General, or all-purpose, jurisdiction, on the other hand, may exist even in suits that do not arise out of or relate to the defendant's contacts so long as the defendant has "continuous and systematic" contacts with the forum state. *Goodyear*, 564 U.S. at 924; *Helicopteros Nacionales*, 466 U.S. at 416. No party in this case seriously contends the Court has general jurisdiction over Bass, Hostetler or LRRC; the issue is whether specific jurisdiction exists.

The specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotations omitted). First, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958); *accord Goodyear*, 564 U.S. at 924. Second, the lawsuit must arise out of or be related to the defendant's contact with the forum. *Goodyear*, 564 U.S. at 923-24; *Helicopteros Nacionales*, 466 U.S. at 414 n. 8.

In a case like this asserting a defendant committed an intentional tort, the constitutional requirements supporting specific jurisdiction are satisfied "only when the defendant expressly aims its actions at the state with the knowledge that they would cause harm to the plaintiff there." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445 (7th Cir. 2010). The defendant must have known that the effects would be felt by the plaintiff in the forum state. *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010). "'[E]xpress aiming' remains the crucial requirement when a plaintiff seeks to establish personal jurisdiction" over a defendant accused of an intentional tort. *Mobile Anesthesiologists*, 623 F.3d at 445-46. This requirement "ensure[s] that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state." *Tamburo*, 601 F.3d at 702 (internal quotations omitted).

5

For example, in *Calder v. Jones*, 465 U.S. 783, 789-90 (1984), the Supreme Court held that a California court had personal jurisdiction over out-of-state defendants because they "wrote and . . . edited an article that they knew would have a potentially devastating impact upon [the plaintiff]. And they knew that the brunt of that injury would be felt by respondent in the State [of California] in which she lives and works and in which the [publication containing the article] has its largest circulation." Similarly, in *Tamburo*, the Court of Appeals for the Seventh Circuit held that a federal court in Illinois had personal jurisdiction over foreign defendants under *Calder*'s test because "although they acted from points outside the forum state, these defendants specifically aimed their tortious conduct at [the plaintiff] and his business in Illinois with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there." *Tamburo*, 601 F.3d at 706.

To determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice, the Court should also consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King,* 471 U.S. at 477 (internal quotations omitted).

**II.     Analysis**

    1.     <u>Bass</u>

Bass asks the Court to dismiss her from this case because she is not subject to the personal jurisdiction of the Court. Jenkins argues that Bass's conduct in the Nevada Lawsuit related to Illinois subjects her to specific jurisdiction in Illinois for a case about that conduct.

The Court first turns to the allegations against Bass in Jenkins' Second Amended

Complaint. He claims that Bass, who was representing Jenkins' daughters in the Nevada Lawsuit, wrote threatening letters and emails to Jenkins' Nevada attorney in the Nevada Lawsuit.[1] Jenkins alleges Bass or Hostetler threatened to file notices of *lis pendens* – notices of a pending lawsuit – on all real estate owned by CSRESL, LLC and did, in fact, file such notices on two Illinois properties owned by CSRESL in the counties in which the properties were located. Jenkins alleges the filings kept him from doing his job as manager of CSRESL and borrowing money to fund its operations. He also alleges that Bass's conduct caused him emotional distress and the loss of the love and contact of his two daughters and one grandchild. Jenkins has sued Bass for:

- "The crimes of Blackmail, Extortion, Coercion and Defamation" for accusing Jenkins of conducting criminal activities (forging and filing documents with a court; identity theft by forging signatures) without any proof of those crimes and stating that the daughters will be looking into pursuing other remedies through governmental agencies such as the Missouri Attorney General, the Federal Bureau of Investigation, and the Internal Revenue Service (Count XI);

- intentional infliction of emotional distress for disturbing Jenkins' relationship with his daughters (Count XII);

- negligent infliction of emotional distress (Count XIII);

- unauthorized practice of law for filing notices of *lis pendens* in Illinois and Missouri without being licensed to practice law in Illinois (Count XIV); and

- "The crime of Mail Fraud" for mailing documents described in the Second Amended Complaint (Count XV).

In her motion (Doc. 39), Bass points out that she is a Nevada attorney who worked for LRRC in Nevada at all times and in all conduct relevant to this lawsuit. LRRC is headquartered in Arizona and has no offices or members in Illinois. Bass has presented affidavit testimony of her lack of connections with Illinois. Specifically, she resides in Nevada and has never resided

---

[1] The letters are attached to the pleading and do not actually make the threats that Jenkins claims they do.

7

in Illinois. She has never traveled in Illinois for any appreciable length of time. She has never consented to being sued in Illinois. She has never personally transacted any business in Illinois. She has never entered into or performed any contract in Illinois. She has never knowingly committed any tort in Illinois or otherwise caused any act to be done, or consequences to occur, in Illinois. She has never owned, used or possessed any real or tangible personal property in Illinois. She has never contracted to insure any person, risk or property situated in Illinois. She has never obtained any professional license in Illinois.

She explains that her sole connection with the state of Illinois stemmed from her representation of Jenkins' daughters Rebecca Frausto and Christina Jenkins, both of whom are Illinois citizens, in the Nevada Lawsuit. In that suit, Jenkins, a Missouri citizen, sued his daughters in Nevada over the ownership of CSRESL, a Nevada company, which owned property in Illinois. Represented by Bass and her colleague Hostetler, the daughters countersued Jenkins and CSRESL. Bass signed *lis pendens* notices for CSRESL's Illinois properties (Doc. 32-1 at 4-7). The agreement settling the Nevada Lawsuit mentions the Illinois properties.

In response to Bass's motion (Doc. 46), Jenkins argues that the filing of the *lis pendens* notices in Illinois is sufficient to support specific personal jurisdiction over Bass in the case at bar. He claims he was damaged by the filings because they prevented him, as manager of CSRESL, from taking out mortgages on the properties to obtain funds to manage that real estate. Jenkins also claims somewhat cryptically that Bass used the Illinois real estate "as a ransom in a blackmail scheme." Pl.'s Resp. at 3 (Doc. 46).

Viewing all disputes of fact in Jenkins' favor, the Court finds Jenkins has not made a *prima facie* showing that Bass expressly aimed her actions at the state of Illinois knowing they would cause harm to Jenkins there. The vast majority of Bass's conduct about which Jenkins

complains had nothing to do with Illinois.  The communications between Bass and Jenkins' Nevada attorney that offends Jenkins were sent and received in Nevada and concerned the Nevada Lawsuit about control of a Nevada company.  To the extent these communications caused Jenkins harm, he suffered that harm in Missouri, where he was at all relevant times a citizen.

Perhaps the strongest connection to Illinois is that Bass signed the notices of *lis pendens* and filed them in Illinois.  However, any harm caused by the alleged wrongful or unauthorized filing of such notices would be suffered only by CSRESL, the owner of the Illinois property, not Jenkins, who purports only to be the manager of CSRESL.

In sum, Bass's purposeful connections with Illinois are extremely attenuated:  she accepted representation of Illinois clients in litigation about a non-Illinois company that happened to own two pieces of property in Illinois, and she prepared and filed notices that the litigation might affect the title to or possession of those properties.  Simply agreeing to represent clients about control of a corporate entity that happens to own Illinois property, and then giving notice that litigation may have an impact on that property, does not indicate Bass was purposefully availing herself of the benefits and protections of Illinois law such that she should reasonably expect to be brought into court by Jenkins in this lawsuit.  Bass's relationship with Illinois in the context of this litigation is simply too attenuated to support specific personal jurisdiction.

The Court further finds that Illinois has minimal interest in adjudicating this dispute between citizens of Missouri and Nevada over conduct nearly exclusively occurring in Nevada and only tangentially involving Illinois property owned by a Nevada company.  It would be a substantial burden on Bass, who resides in Nevada and has no substantial connection to Illinois,

to litigate in this forum, while Jenkins has already expressed a willingness and ability to litigate a case in Nevada – the Nevada Lawsuit. Furthermore, a Nevada court would presumably be more familiar with the Nevada Lawsuit from which this case stems as well as Nevada law, which would apply to many of the asserted causes of action. Proceeding on this case in Illinois risks unnecessarily expending judicial resources where another court is better suited to decide the relevant issues and would provide an adequate forum for Jenkins to obtain any relief to which he is entitled.

For all of these reasons, the Court will dismiss Bass from this case for lack of personal jurisdiction.

2. Hostetler

The Court turns to Jenkins' allegations against Hostetler. He alleges that Hostetler wrote threatening letters and emails to Jenkins' Nevada attorney in the Nevada Lawsuit, although the letters attached to the pleading reveal they were actually from Bass, not Hostetler.[2] Jenkins alleges Hostetler also threatened to file notices of *lis pendens* on all CSRESL's real property and did so on the two Illinois properties, which kept him from properly managing CSRESL. He also alleges that Hostetler breached the confidential settlement agreement that resolved the Nevada Lawsuit when she made public filings in an attempt to reopen the case and to further harm Jenkins by protracting the litigation. He complains that because the settlement agreement involved Illinois legal issues, Hostetler, who is not licensed to practice in Illinois, was not qualified to advise her clients on those matters and should not have attempted to bring those matters before the Nevada court. He also alleges that Hostetler's conduct caused him emotional

---

[2] "Where an exhibit and the complaint conflict, the exhibit typically controls." *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

distress and the loss of the love and contact of his two daughters and one grandchild. Jenkins has sued Hostetler for:

- "The crimes of Blackmail, Extortion, Coercion and Defamation" for accusing Jenkins of not participating in good faith in mediation of the Nevada Lawsuit and threatening to instigate litigation using improper filings (Count XVI);

- intentional infliction of emotional distress for sending threatening letters and for disturbing Jenkins' relationship with his daughters (Count XVII);

- negligent infliction of emotional distress (Count XVIII);

- unauthorized practice of law for attempting to litigate Illinois legal matters without an Illinois law license and filing notices of *lis pendens* in Illinois and Missouri without being licensed to practice law in Illinois (Count XIX);

- breach of contract for disclosing confidential matters within the settlement agreement and attempting to reopen the settled Nevada Lawsuit (Count XX); and

- "The crime of Mail Fraud" for mailing documents described in the Second Amended Complaint (Count XXI).

In her motion to dismiss (Doc. 15), Hostetler states that, like Bass, she is a Nevada attorney who also worked for LRRC at all relevant times and who, along with Bass, represented Jenkins' two daughters in the Nevada Lawsuit. Hostetler has presented affidavit testimony of her lack of connections with Illinois, which is identical in all material respects to Bass's affidavit. Like Bass, Hostetler's sole connection with Illinois is the representation of Jenkins's daughters in the Nevada Lawsuit. The only difference in the connections is that Hostetler did not sign the notices of *lis pendens* filed on CSRESL's Illinois properties, although her name appears as an attorney for the daughters on the document below Bass's signature.

In his response to Hostetler's motion (Docs. 32 & 46), Jenkins asserts several other connections between Hostetler and Illinois, although he presents no evidence in support of those assertions. He speculates that Hostetler performed research in Illinois to find an accurate property description of CSRESL's Illinois property and asserts that she used mail or email to file

11

the *lis pendens* notices in Illinois. He also claims without factual details that Hostetler used the Illinois real estate "as a ransom in a blackmail scheme." Pl.'s Resp. at 3 (Doc. 46). Jenkins notes that Hostetler used email to forward to him the notices of *lis pendens* and to communicate with him and Alexandropoulos while they were at an Illinois residence. He claims that Hostetler asked Jenkins, a resident of Illinois at the time, to file releases of the *lis pendens* notices for the Illinois properties because she did not have time to do so, thus making him her Illinois agent. Finally, Jenkins alleges Hostetler was responsible for arranging for his daughters to be deposed in Illinois in connection with the Nevada Litigation, although the transcript excerpt he cites does not reflect that Hostetler was present either in person or by teleconference at the deposition. Jenkins believes this is sufficient to support specific personal jurisdiction over Hostetler in this lawsuit.

Viewing all factual disputes in Hostetler's favor, the Court finds Jenkins has not shown that Hostetler expressly aimed her actions at the state of Illinois knowing they would cause harm to Jenkins there. As with Bass, the vast majority of Hostetler's conduct about which Jenkins complains had nothing to do with Illinois and everything to do with her Nevada conduct in connection with the Nevada Lawsuit and its settlement. To the extent these actions caused Jenkins harm, he suffered that harm in Missouri.

The strongest connection Hostetler has with Illinois is through the *lis pendens* notices and the Nevada Lawsuit settlement agreement that mentions CSRESL's Illinois property. Although Hostetler did not sign the *lis pendens* notices, Jenkins claims she and Bass were responsible for filing them in Illinois. However, as noted in the Court's discussion of Bass, any harm caused by the alleged wrongful or unauthorized filing of such notices would be suffered only by CSRESL, the owner of the Illinois property, not Jenkins, who purports only to be the manager of the

company.

As for the other so-called Illinois connections, Jenkins provides only speculation, not evidence, that Hostetler performed legal research in Illinois regarding property descriptions for CSRESL's Illinois property. Such information is available from numerous sources, likely including CSRESL, that are not in Illinois. Similarly, communication with Jenkins via email while he was in Illinois is a weak connection because it depends on the fortuitous physical location of the recipient when he opens the email. As for Jenkins' assertion that he became Hostetler's Illinois agent by agreeing to file documents in Illinois County Clerks' offices that she was too busy to file, that contention is absurd in light of the fact that he was a litigation adversary at the time. Finally, participation in the arrangement of two depositions in Illinois in connection with the Nevada Lawsuit is not sufficiently connected to the alleged wrongs in this case, which have nothing to do with the depositions. *See, e.g., Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985) (under Indiana law, finding no personal jurisdiction over defendant lawyer who came to forum state to take one deposition where controversy did not arise from that deposition).

In sum, Hostetler's purposeful connections with Illinois are extremely attenuated. Like Bass, she accepted representation of Illinois clients in litigation about a company that happened to own two pieces of property in Illinois, she filed notices that the litigation might affect the title to or possession of those properties, and she participated in negotiating a settlement that covered those properties in some fashion. Simply agreeing to represent clients about a corporate entity that owns Illinois property, giving notice of the potential impact of the litigation on the property, and including the property in a settlement negotiation and agreement does not indicate Hostetler was purposefully availing herself of the benefits and protections of Illinois law such that she should reasonably expect to be brought into court by Jenkins in this lawsuit. Hostetler's

13

relationship with Illinois in the context of this litigation is simply too attenuated to support specific personal jurisdiction.

The Court further finds for the reasons discussed in connection with Bass that Illinois does not have a significant interest in litigating this lawsuit against Hostetler where another forum can provide an efficient, convenient and adequate remedy to the current dispute between Jenkins and Hostetler.

For all of these reasons, the Court will dismiss Hostetler from this case for lack of personal jurisdiction.

3. LRRC

Jenkins' Second Amended Complaint asserts a cause of action labeled "Negligent Supervision" against LRRC for negligent failure to supervise Bass and Hostetler in connection with the Nevada Lawsuit, but within that count it appears to also seek to hold LRRC liable for Bass's and Hostetler's actions under an agency theory (Count XXII). As noted above and as pled by Jenkins in the Second Amended Complaint, LRRC is a citizen of several states but not of Illinois, it has no office or contact in Illinois, and it does not advertise its legal services in Illinois.

In its motion to dismiss (Doc. 36), LRRC argues as one reason for dismissal that the Court does not have personal jurisdiction over it. It argues that its only connections to Illinois relating to this lawsuit are the connections of Hostetler, which are insufficient to support specific personal jurisdiction (Bass had not yet been served with process or filed her motion to dismiss at the time LRRC filed its motion). It has submitted an affidavit from its general counsel stating that it has never maintained an office, facility, mailing address or telephone listing anywhere in Illinois, has no subsidiaries or affiliates in Illinois, has no agent for service of process in Illinois,

and is not incorporated in Illinois. It has never consented to be sued in Illinois, holds no registrations or licenses in Illinois, has no agents conducting business in Illinois, has not contracted to insure any person, risk or property situated in Illinois. The affiant is not aware of any allegation that LRRC committed any tort in Illinois or otherwise caused any tortious act to be done, or consequences to occur, in Illinois.

In response (Doc. 47), Jenkins notes that Hostetler and Bass were agents of LRRC and used its forms and letterhead. He suggests their contacts with Illinois should be imputed to LRRC for personal jurisdiction purposes.

LRRC's contacts with Illinois related to this lawsuit are the same as – and no stronger than – those of Bass and Hostetler, which, as discussed above, are insufficient to support personal jurisdiction. Even in combination, those contacts do not amount to sufficient contacts to satisfy due process for the purposes of exercising personal jurisdiction over LRRC. LRRC has done nothing but represent two Illinois citizens in a Nevada dispute over the ownership and control of a Nevada company that happened to own two pieces of property in Illinois that could have been affected by the litigation. This does not demonstrate purposeful availment of the privilege of conducting activities in Illinois and the benefits and protections of Illinois' laws such that LRRC should reasonably anticipate being haled into court here. It is therefore insufficient to support personal jurisdiction over LRRC. Accordingly, the Court will dismiss LRRC for lack of personal jurisdiction.

In light of this disposition of the personal jurisdiction issue, the Court need not address the question of the sufficiency of service of process on LRRC.

## III. Conclusion

Because Jenkins has not carried his burden of making a *prima facie* showing of personal

jurisdiction over Bass, Hostetler and LRRC, the Court:

- **GRANTS** the motions to dismiss filed by those defendants (Docs. 15, 36 & 39);

- **DISMISSES** defendants Bass, Hostetler and LRRC from this case **without prejudice for lack of personal jurisdiction**; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:  June 14, 2017**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
