SCOTT JENKINS and RHONDA
STEPHANIE ALEXANDROPOULOS,

        Plaintiffs,

      v.

BRUCE BURKEY, TAYLOR LAW FIRM
PC, JOICE BASS, JENNIFER HOSTETLER
and LEWIS ROCA ROTHGERBER LLP,

        Defendant.

Case No. 16-cv-792-JPG-SCW

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of defendants Bruce Burkey and

Taylor Law Offices, PC ("TLO"; misnamed in the Second Amended Complaint as Taylor Law

Firm PC) to dismiss the claims against them pursuant to Federal Rule of Civil Procedure

12(b)(6) (Doc. 14). Plaintiff Scott Jenkins has responded to the motion (Docs. 31 & 46).

Plaintiff Rhonda Alexandropoulos has not responded to the motion, so under Local Rule 7.1(c)

the Court finds she has admitted it has merit.

## I.      Background

Jenkins originally filed a nearly identical lawsuit on September 29, 2015, in the United

States District Court for the Eastern District of Missouri, which described the litigation as

follows:

> This litigation arises from a prior lawsuit plaintiff Jenkins filed against his
> daughters in Nevada to regain control of a family-owned company in Nevada (the
> "Nevada Lawsuit"). In that lawsuit, Jenkins' daughters retained defendants Bass
> and Hostetler of the Nevada law firm Lewis Roca Rothgerber Christie LLP as
> their attorneys. In addition, plaintiff Jenkins' daughters retained defendant
> Burkey of the Taylor Law Firm, P.C. in Illinois.

\* \* \*

Plaintiffs have now brought a variety of claims against the named attorneys and law firms, which all relate to the defendants' work representing their clients opposite plaintiff Jenkins in the Nevada Lawsuit. These claims include intentional infliction of emotional distress, negligent infliction of emotional distress, intentional interference with a prospective economic advantage, defamation, negligent supervision, and breach of contract. Plaintiffs have also alleged that defendants committed fraud, fraudulent misrepresentation, conspiracy, theft, the unauthorized practice of law, illegal possession of personal credit file information, violating the Illinois Consumer Fraud and Deceptive Business Practice Act, blackmail, extortion, coercion, mail fraud, and sending threatening communications by mail. Plaintiffs also allege that defendants Bass and Hostetler illegally filed or threatened to file *lis pendens* in Illinois and Missouri.

Mem. & Order at 1-2, *Jenkins v. Burkey*, No. 4:15-cv-1494-SNLJ (E.D. Mo. June 21, 2016). In June 2016, the Eastern District of Missouri court dismissed the action for lack of personal jurisdiction over the defendants, so on July 14, 2016, Jenkins and Alexandropoulos refiled the case in the Southern District of Illinois as this case. Burkey and TLO believe the plaintiffs have failed to state a claim for the ten counts pled against them.

## II.     Standard for Dismissal

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Bell Atlantic*, 550 U.S. at 561-63; *Concentra Health Servs.*, 496 F.3d at 777. Now "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations, *Bell Atl.*, 550 U.S. at 555, and it remains true that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). Nevertheless, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499 F.3d at 667.

In the case of a pleading alleging fraud, the standard is different. Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Generally, pleading "with particularity" requires a plaintiff to describe the "who, what, when, where, and how" of the fraud, although that formulation is not set in stone and may vary based on the facts of a particular case. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011).

> The particularity requirement ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations. And the requirement dovetails with lawyers' ethical obligations to ensure they conduct a pre-complaint inquiry before signing off on their clients' contentions.

*Id.* at 439.

### III.  Facts Alleged

Viewing all allegations in the plaintiffs' favor, the Second Amended Complaint alleges the following relevant facts related to Burkey and TLO.

Before the Nevada Lawsuit began, Jenkins was the manager of CSRESL, LLC, a Nevada limited liability company, and was authorized to act on its behalf. Burkey was an attorney licensed to practice in Illinois but not in Nevada. He worked for TLO, an Illinois law firm. Burkey represented Jenkins' two daughters, Rebecca Frausto and Christina Jenkins, in connection with their interest in CSRESL.

At some point Burkey obtained confidential in-house emails between attorneys and staff of a Colorado law firm Jenkins had retained to assist him with administering his deceased aunt's estate. The emails were about a subject completely unrelated to issues involved in the Nevada Lawsuit. Each email contained a warning that it was confidential and instructed anyone possessing it without authorization to destroy it and notify the email's sender immediately. Burkey did not comply with these instructions when he came into possession of the emails and

instead altered the emails to make it appear that Jenkins had done something illegal during the estate administration, that he had implicated Christina Jenkins in illegal activity, and that one of Jenkins' cousins would pursue Christina Jenkins for money from the aunt's estate that was used to pay for Christina Jenkins' education. Burkey altered the emails to convince Christina Jenkins to oppose her father and participate in removing him as manager of CSRESL. Burkey knew but failed to tell Christina Jenkins that a mediated settlement agreement concerning the aunt's estate would have prevented the cousin from seeking recourse against her.

In September 2011, Burkey represented to Frausto and Christina Jenkins that he was qualified and permitted to draft a document entitled "Action by Majority Members of CSRESL, LLC" that purported to remove Jenkins as the manager of CSRESL and replace him with Frausto. The document cites Nevada Revised Statute 86.294 as its authority, although Burkey knew that there was no such statute.[1] Burkey instructed Frausto and Christina Jenkins to sign the document as owners of the majority of membership interest in CSRESL, and they did. Burkey did not give Jenkins advance notice of the corporate action and did not have the proper authority from CSRESL, its owners or its members to draft the document. Burkey mailed the document to the Nevada Secretary of State in December 2011 for filing. Jenkins believes the document was not effective to remove him as manager of CSRESL.

In April 2012, Burkey helped his clients remove all the money from a CSRESL bank account of which Jenkins believed he controlled as manager of CSRESL. In that same month, Burkey informed the United States Postal Service, a tenant of a CSRESL property, not to send rent payments to Jenkins as the manager CSRESL. At the time, Frausto and Christina Jenkins

---

[1] Nevada Revised Statute 86.291.3 describes that the management of a Nevada limited liability company is vested in its members in proportion to their capital contributions unless otherwise provided in the operating agreement or statute.

owed Burkey more than $10,000 in legal fees.

At some point, Jenkins sued Frausto and Christina Jenkins in the Nevada Lawsuit over the question of who controlled CSRESL. In the course of that litigation, Burkey provided the altered emails from the Colorado law firm to Frausto and Christina Jenkins' attorneys in the Nevada Litigation for use in that proceeding.

At some point, Burkey sent letters to Jenkins' attorney threatening Jenkins with "purported criminal consequences" if he did not agree to a civil settlement as Burkey requested. Burkey has never presented Jenkins with evidence of any criminal or civil wrongdoing by Jenkins.

In other letters to Jenkins' attorneys, Burkey said things that Jenkins believes were slanderous and degrading. In a 2012 meeting that Jenkins attended, Burkey falsely accused Jenkins of certain conduct without allowing Jenkins to defend himself and threatened to divulge false information about Jenkins and his business dealings if Jenkins did not agree to step down as manager of CSRESL and cede control of the company to his daughters. Burkey did not let Jenkins know he had already been removed as manager six months earlier, in September 2011.

Burkey had an unauthorized copy of Jenkins' confidential personal credit report from TransUnion that should have been transmitted only to Jenkins. Burkey neither destroyed the credit report nor sent it to Jenkins. Instead, he used it to convince Frausto and Christina Jenkins that Jenkins was in bad financial shape and used it in the Nevada Lawsuit.

Burkey used the United States Postal Service to transmit documents in connection with the aforementioned acts.

Jenkins claims that he was forced to make personal expenditures of over $200,000, mostly in legal fees, because of Burkey's alleged illegal conduct. He has also suffered distress

and emotional damages from the loss of love and contact with his daughters and grandchild.

## IV. Analysis

Burkey and TLO ask the Court to dismiss all counts against them; the Court addresses each count in turn.

### A. Count I: Fraud and Fraudulent Misrepresentation

In Count I, Jenkins alleges Burkey made a false statement in the "Action by Majority Members of CSRESL, LLC" by citing a Nevada statute that did not exist, and then directed Frausto and Christina Jenkins to sign the improper document. Jenkins further alleges Burkey "altered and failed to adhere to" the emails from the Colorado law firm in violation of Colorado law.

In his motion to dismiss, Burkey argues Jenkins has failed to plead common-law fraud under Illinois or Nevada law.

Under Illinois law, the elements of fraudulent misrepresentation, also referred to as common-law fraud, are:

> (1) a false statement of material fact; (2) knowledge or belief of the falsity by the person making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance.

*Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 889 (Ill. 2012). Nevada law on fraudulent misrepresentation is similar to Illinois law. Under Nevada law, the elements of fraudulent misrepresentation are:

1. A false representation made by the defendant;
2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);
3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;
4. Plaintiff's justifiable reliance upon the misrepresentation; and
5. Damage to the plaintiff resulting from such reliance.

*Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).

Burkey argues that the incorrect statutory citation in the "Action by Majority Members of CSRESL, LLC" was just a mistake, not a false statement of fact. He further notes that, to the extent the erroneous citation might constitute a false statement, Jenkins does not allege that Burkey knew or should have known the citation was incorrect or that he made the statement intending Jenkins to act in reliance on it or any of the other allegedly false statements set forth in the Second Amended Complaint. Finally, Burkey argues Jenkins has not explained how the corporate action violated any provision of Nevada law or how Burkey's alleged altering of the Colorado law firm emails violated any Colorado law.

In response, Jenkins does not address Burkey's argument as to his fraud/fraudulent misrepresentation claim. The Court construes this as an admission of the merits of Burkey's arguments.

Even if Jenkins had not waived any objection to Burkey's argument by failing to respond to it, the Court would find Jenkins has failed to plead the claim. Jenkins has not alleged sufficient facts in the Second Amended Complaint to plausibly suggest that Burkey made any misrepresentation with the intent of inducing Jenkins to rely on it or that Jenkins did, in fact, rely on it. Misrepresentations to third parties, like Frausto and Christina Jenkins, cannot support a cause of action by Jenkins. Thus, Jenkins has not sufficiently pled a fraud/fraudulent misrepresentation claim against Burkey under either Illinois or Nevada law.

The Court notes that Jenkins' pleading of Count I is not deficient simply because he has not plead enough facts or enough details to state a claim but instead because he appears to fundamentally misunderstand whether a fraud legal theory applies to Burkey's conduct about which he complains – alleged misrepresentations made to someone other than himself. The

Court believes it would serve no purpose to allow Jenkins to amend his complaint again to try to shoehorn his grievances into a legal theory that simply does not fit. This is especially true where Jenkins appears from his lack of response to Burkey's motion to have given up on this legal theory. For these reasons, the Court will dismiss Count I with prejudice.

B.     Count II: The Crime of Conspiracy and Assisting in Theft

In Count II, Jenkins alleges Burkey created documents to assist Frausto and Christina Jenkins in taking money from a CSRESL bank account and in diverting rental income from the United States Postal Service. Jenkins claims he was damaged by having insufficient funds to perform his job as CSRESL's manager.

In his motion to dismiss, Burkey assumes Jenkins is attempting to plead a state civil conspiracy claim under Illinois or Nevada law rather than criminal conspiracy or assisting in the crime of theft. This is correct since private citizens generally cannot bring civil lawsuits for violating criminal laws unless authorized. *See Walsh v. State of Ill.*, 60 Ill. Ct. Cl. 238, 240 (2008) ("[B]y explicitly preserving complementary civil causes of actions and stating a civil injury is separate from the criminal offense, the Criminal Code is clear that no private causes of action are contained therein.").

Under Illinois law, a state law claim for conspiracy has three elements: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004) (citing *Adcock v. Brakegate, Ltd.,* 645 N.E.2d 888, 894 (Ill. 1994)). "[T]he agreement is a necessary and important element of a cause of action for civil conspiracy," although it is not in and of itself a tort. *Adcock*, 645 N.E.2d at 894. "Mere

9

knowledge of the fraudulent or illegal actions of another is . . . not enough to show a conspiracy." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999). Nor is it enough if a defendant innocently performs an act that happens to advance the tortious purpose of another. *Adcock*, 645 N.E.2d at 894.

Under Nevada law, to prove a civil conspiracy claim a plaintiff must also show "a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consolidated Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) (internal quotations omitted). There must be an explicit or tacit agreement between the alleged coconspirators. *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014).

Burkey argues that Jenkins has not adequately alleged the existence of an agreement between Burkey and Jenkins' daughters, a requirement under both Illinois and Nevada law.

In response, Jenkins does not address Burkey's argument as to his civil conspiracy claim. The Court construes this as an admission of the merits of Burkey's argument.

Even if Jenkins had not waived any objection to Burkey's argument by failing to respond to it, the Court would find Jenkins has not pled a viable claim in Count II. Jenkins has not alleged sufficient facts in the Second Amended Complaint to plausibly suggest that Burkey had an express or tacit agreement with Jenkins' daughters to wrongfully take funds, much less an agreement to take funds *from him* as opposed to CSRESL, the only cause of action he would have standing to bring. Thus, Jenkins has not sufficiently pled a civil conspiracy claim against Burkey under either Illinois or Nevada law.

Even though Jenkins' pleading of Count II is deficient because he has not pled enough facts or enough details to state a claim, it also appears he is trying to bring a claim on his own

behalf for a wrong suffered by CSRESL, which he cannot cure simply by pleading more facts. Additionally, it appears from Jenkins' lack of response to Burkey's motion that he may have given up on this legal theory. For these reasons, the Court declines to permit amendment and will dismiss Count II with prejudice.

C.    Count III:  Unauthorized Practice of Law

In Count III, Jenkins alleges Burkey, who is licensed to practice law in Illinois but not Nevada, committed the unauthorized practice of law by preparing the "Action by Majority Members of CSRESL, LLC" for CSRESL, a Nevada company. Jenkins alleges this wrongful conduct caused him to lose his position as manager of CSRESL.

In his motion to dismiss, Burkey argues that neither Illinois nor Nevada recognizes a private right of action for the unauthorized practice of law.

This is the only aspect of Burkey's motion to which Jenkins provides a substantive response. In that response, Jenkins states that Burkey has violated Nevada law regarding the unauthorized practice of law. He believes Burkey should have hired a Nevada attorney to prepare the corporate document for CSRESL. He cites Missouri and Louisiana law on unauthorized practice of law in support of his argument.

Burkey is correct. While it appears Jenkins is not complaining that Burkey was practicing without authority in Illinois in violation of Illinois law, it is true that there is no private right of action by a non-attorney for damages under the Illinois Attorney Act, 705 ILCS 205/.01 *et seq.*, simply for the unauthorized practice of law. *King v. First Capital Fin. Servs. Corp.*, 828 N.E.2d 1155, 1170 (Ill. 2005). The only people who can bring an unauthorized practice of law cause of action are other attorneys licensed in Illinois because "the practice of law by unlicensed persons constitutes an infringement upon the rights of those who are properly licensed." *Id.* at

1169 (citing *Richard F. Mallen & Assocs. v. Myinjuryclaim.com Corp.,* 769 N.E.2d 74, 76 (Ill. App. Ct. 2002)). Jenkins cannot plead such a cause of action because it does not exist for him as a non-attorney whose rights are not being infringed by Burkey's practicing. However, he is not foreclosed from pleading other causes of action under other theories for wrongs committed by an attorney while acting outside his practice authority, as Jenkins had done in other counts in this case. *See, e.g., Torres v. Fiol*, 441 N.E.2d 1300, 1301 (Ill. App. Ct. 1982) (may sue for negligence).

Nevada, on the other hand, recognizes a civil cause of action for the unauthorized practice of law, but only if brought by the State Bar of Nevada, a public corporation controlled by the Nevada Supreme Court. *See* Nev. Rev. Stat. 7.275.1 & 7.285.3. It has not recognized a private cause of action by an aggrieved individual for the unauthorized practice of law. *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 110 P.3d 30, 50 (Nev. 2005), *abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 181 P.3d 670 (Nev. 2008).

The Court does not believe the Nevada Supreme Court would recognize such a cause of action by an aggrieved individual if faced squarely with that question. When a federal court sitting in diversity applies state substantive law, it must apply the law as it believes the highest court of the state would apply it if it were hearing the issues. *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). When the highest state court has not spoken on an issue, the federal court must give great weight to decisions of intermediate appellate courts unless there are persuasive reasons to believe the highest court would rule differently. *Id.* Here, the Court has been unable to locate any Nevada cases suggesting Nevada courts would recognize a cause of action by an individual for the unauthorized practice of law. Furthermore, in light of the express provision for a civil cause of action by the State Bar of Nevada, the Court does not

believe the Nevada Supreme Court would authorize a cause of action by an aggrieved individual.

The cases cited by Jenkins do not convince the Court to rule otherwise. Unlike Illinois and Nevada, both Missouri and Louisiana statutes specifically authorize civil suits for the unauthorized practice of law by an aggrieved consumer of the unauthorized services. *See* Mo. Rev. Stat. 484.020.2; La. Rev. Stat. § 213.1(C) & (D). For this reason, cases involving the unauthorized practice of law in Missouri or Louisiana are not persuasive to this Court.

For these reasons, the Court finds Jenkins has failed to plead a cause of action for the unauthorized practice of law and will dismiss Count III with prejudice.

D.      Count IV:  Illinois Consumer Fraud and Deceptive Business Practices Act

In Count IV, Jenkins alleges Burkey violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, when he made misrepresentations to Frausto and Christina Jenkins in connection with the "Action by Majority Members of CSRESL, LLC," the same misrepresentations on which Count 1 relies. He alleges that Jenkins' daughters relied on those misrepresentations, which eventually caused Jenkins to suffer harm by being removed as manager of CSRESL.

In his motion to dismiss, Burkey notes that the statute of limitations for ICFA damage claims is three years. *See* 815 ILCS 505/10a(e). He notes that the misrepresentations leading to the execution of the "Action by Majority Members of CSRESL, LLC," occurred on or before September 2011, the latest conduct alleged by Burkey was in April 2012, and this lawsuit was filed in July 2016. This was almost five years after the alleged misrepresentations and more than four years after the final acts alleged by Burkey in the Second Amended Complaint. He notes that Jenkins has not pled facts suggesting his cause of action accrued later than September 2011 due to the discovery rule.

Although Jenkins has not responded to the statute of limitations argument, so the Court could deem it admitted, the Court rejects it because Burkey has not come close to carrying his burden of showing the limitations period has passed. "Dismissing a complaint as untimely at the pleading stage is an unusual step, since a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations. " *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Therefore, it is irrelevant that Jenkins has not pled sufficient facts to suggest the discovery rule applies. It is Burkey's burden to show it does not apply, and he has not done that.

Additionally, Burkey has not shown that the one-year savings period under Illinois law, 735 ILCS 5/13-217, does not apply to make Jenkins' ICFA claim timely. Generally, that statute provides that a plaintiff may commence a new action within a year of dismissal of the same claim for lack of jurisdiction if the limitations period expired while the earlier case was pending. Burkey has not shown that the one-year savings period does not apply in this case, which was filed less than a month after a nearly identical lawsuit was dismissed for lack of personal jurisdiction in the Eastern District of Missouri. In sum, Burkey has not carried his burden at the motion to dismiss stage of showing Jenkins' ICFA claim is time-barred.

Burkey also argues that Jenkins cannot bring an ICFA claim based on an attorney's representation of another client because such matters in Illinois are generally left to rules regarding attorney conduct, not consumer fraud.

In response, Jenkins does not address Burkey's argument as to the sufficiency of his ICFA claim. The Court construes this as an admission of the merits of Burkey's argument.

Even if Jenkins had not waived any objection to Burkey's argument by failing to respond to it, the Court would find Jenkins has not pled a viable claim. The elements of an ICFA claim

are: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce." *Cripe v. Leiter*, 703 N.E.2d 100, 103 (Ill. 1998). Intent to deceive is not required. *Id.* However, Illinois law is clear that the ICFA does not apply "to regulate the conduct of attorneys in representing clients." *Id.* at 107. This is because lawyers' conduct has historically been regulated exclusively and extensively by the Illinois Supreme Court using a comprehensive regulatory scheme, *id.* at 105, and the Illinois legislature has not clearly indicated it intended to subject attorney conduct to the ICFA, *id.* at 106-07.

The inapplicability of the ICFA is not limited to disputes between an attorney and his or her client but extends to claims by third parties based on any conduct of an attorney while engaged in the practice of law. This is because the Illinois Supreme Court's regulatory scheme for attorneys "reaches beyond the attorney-client relationship itself to regulate the conduct of an attorney with a nonclient and a potential or actual adversary." *Kosydor v. Am. Express Centurion Servs. Corp.*, 979 N.E.2d 123, 132 (Ill. App. Ct. 2012). Thus, "claims against an attorney for misconduct in representing another client while engaged in the practice of law are not allowed under the [ICFA]." *Id.*

Because the conduct of which Jenkins complains occurred as part of Burkey's legal representation of Frausto and Christina Jenkins, Jenkins cannot bring a claim under the ICFA based on that conduct. Accordingly, the Court will dismiss Count IV with prejudice.

E.    Count V: Intentional Infliction of Emotional Distress

In Count V, Jenkins alleges Burkey committed the tort of intentional infliction of emotional distress ("IIED") when he created the "Action by Majority Members of CSRESL, LLC," without correct legal citation and without being licensed to practice in Nevada and then

presented the document to Frausto and Christina Jenkins as a proper document for their signatures. Jenkins claims Burkey knew, and even may have intended, that this misconduct would cause a rift between Jenkins and his daughters that would cause him severe emotional distress.

In his motion to dismiss, Burkey argues that Jenkins has failed to state the type of extreme and outrageous behavior to support a claim for IIED under either Illinois or Nevada law.

In response, Jenkins does not address Burkey's argument as to the sufficiency of his IIED claim. The Court construes this as an admission of the merits of Burkey's argument.

Even if Jenkins had not waived any objection to Burkey's argument by failing to respond to it, the Court would find Jenkins has not stated a claim under either Illinois or Nevada law.

Under Illinois law, a claim for IIED requires a plaintiff to show that (1) the conduct involved was "truly extreme and outrageous," (2) the defendant either intended to inflict, or knew there was a high probability he would cause, severe emotional distress, and (3) the defendant actually caused severe emotional distress. *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003) (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)). To support an intentional infliction of emotional distress claim, the conduct must be "so severe that no reasonable man could be expected to endure it." *Feltmeier*, 798 N.E.2d at 84 (citing Restatement (2d) of Torts § 46, cmt. j, at 77-78 (1965)). "Conduct is of an extreme and outrageous character where 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994) (quoting Restatement (2d) of Torts § 46, cmt. d, at 73 (1965)).

Under Nevada law, an IIED plaintiff must show "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the

plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998) (internal quotations omitted). "[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (quoting California Book of Approved Jury Instructions No. 12.74 and applying to Nevada IIED claim); *accord Hackler v. State Farm Mut. Auto. Ins. Co.*, 210 F. Supp. 3d 1250, 1257 (D. Nev. 2016) ("Conduct is extreme or outrageous if it is atrocious, beyond all possible bounds of decency, and utterly intolerable.").

The conduct Jenkins alleges Burkey committed does not qualify as "extreme or outrageous" under either Illinois or Nevada law. While it may be upsetting that, as Jenkins alleges, Burkey would practice outside his authorized bounds, would use an incorrect statutory citation, and would urge his client to sign an invalid paper that would cause the breakdown of family relationships, such conduct would not cause an average member of the community to arouse his resentment and exclaim, "Outrageous!" Nor is it outside all possible bounds of decency or utterly intolerable in a civilized community. Instead, it is the type of distressing conduct people are expected to endure, yet hope for a legal remedy if and when appropriate. For this reason, the Court will dismiss Count V with prejudice.

F.     Count VI:  Negligent Infliction of Emotional Distress

In Count VI, Jenkins alleges, without any explanation of the relevant conduct, that Burkey committed the tort of negligent infliction of emotional distress ("NIED"). The Court presumes Jenkins intends to refer to the conduct supporting his claim for IIED.

In his motion to dismiss, Burkey argues that Jenkins has failed to plead an NIED claim under either Illinois or Nevada law.

17

In response, Jenkins does not address Burkey's argument as to the sufficiency of his NIED claim. The Court construes this as an admission of the merits of Burkey's argument.

Even if Jenkins had not waived any objection to Burkey's argument by failing to respond to it, the Court would find Jenkins has not stated an NIED claim under either Illinois or Nevada law.

Under Illinois law, either (1) a direct victim of a defendant's negligence or (2) a bystander within the "zone of physical danger" who reasonably fears for his own safety may bring a NIED claim. *Schweihs v. Chase Home Fin., LLC*, 41 N.E.3d 1011, 1018 (Ill. App. Ct. 2015), *appeal denied,* 48 N.E.3d 677 & *aff'd*, No. 120041, 2016 WL 7240592 (Ill. 2016), *reh'g denied* (Ill. Mar. 27, 2017). As with any negligence claim, a direct victim must prove the defendant owed him a duty, the defendant breached that duty, and the breach caused an injury to the plaintiff. *Corgan v. Muehling*, 574 N.E.2d 602, 606 (Ill. 1991). A direct victim must also suffer physical injury or impact contemporaneous with the breach. *Id.* at 605-06. A bystander, on the other hand, must show he observed an accident from within "a zone of physical danger and . . ., because of the defendant's negligence, ha[d] reasonable fear for his own safety" from a high risk of physical impact, and suffered "physical injury or illness as a result of the emotional distress caused by the defendant's negligence." *Rickey v. Chicago Transit Auth.*, 457 N.E.2d 1, 5 (Ill. 1983).

Setting aside the question of whether Jenkins could adequately plead a physical injury, impact or illness, Jenkins has not suggested any set of facts where NIED would provide a viable remedy. Nothing Jenkins pleads in his Second Amended Complaint suggests Burkey owed him any duty or breached that duty. Burkey was the attorney for Jenkins' daughters, to whom he clearly owed a duty, but not Jenkins. In the absence of any duty owed to Jenkins, he cannot

bring an NIED claim as a direct victim. He has also not alleged anything showing he observed an accident from within a physical or virtual "zone of physical danger" such that he had a reasonable fear for his own safety or well-being from the emotional distress caused by his being a witness to harm perpetrated by Burkey. For these reasons, Jenkins has not stated, and cannot state, a claim for NIED under Illinois law.

Under Nevada law, an NIED claim may be brought only by a bystander who witnesses an event. *Grotts v. Zahner,* 989 P.2d 415, 416 (Nev. 1999). "[A] bystander plaintiff [must] be closely related to the victim of an accident, be located near the scene of the accident, and suffer a shock resulting from direct emotional impact stemming from the sensory and contemporaneous observance of the accident." *Crippens v. Sav On Drug Stores*, 961 P.2d 761, 762 (Nev. 1998) (citing *State v. Eaton*, 710 P.2d 1370, 1377-78 (Nev. 1985)). The "accident" need not be a traditional accident like a car collision, but can include other types of foreseeable occurrences witnessed by the bystander. *Id.* at 762-63. In *Crippens*, the Nevada Supreme Court noted that the cause of action was most often brought by observers to a car accident but that it could also be viable for a daughter who suffered emotional distress after unwittingly giving her mother medicine that caused her death because of a pharmacist's negligence in filling a prescription. *Id.* at 762.

None of the facts alleged by Jenkins suggest he could make out an NIED claim under Nevada law. While he was closely related to the alleged victims, his daughters, he was not physically present for the alleged wrongdoing or otherwise closely connected to it such that he could have witnessed the event and suffered any shock because of that observation. The NIED theory simply does not fit the conduct about which Jenkins complains.

For these reasons, the Court will dismiss Count VI with prejudice.

G.  Count VII:  Blackmail, Extortion, Coercion and Defamation

In Count VII, Jenkins alleges Burkey committed blackmail, extortion, coercion and defamation by writing letters in which he accused Jenkins of participating in criminal activities and threatening to report those activities to law enforcement if Jenkins did not settle a lawsuit. He also alleges that, in front of Frausto and Christina Jenkins and without proof, Burkey accused Jenkins of criminal activities and warned Jenkins' daughters that they could be harmed by being involved with him.  This caused harm to Jenkins' relationship with his daughters.

In his motion to dismiss, Burkey argues that blackmail, extortion and coercion are crimes for which there is no private right of action.  He further argues that Jenkins brings his defamation claim beyond the one-year statute of limitations.

In response, Jenkins does not address Burkey's argument as to these claims.  The Court construes this as an admission of the merits of Burkey's argument.

Even if Jenkins had not waived any objection to Burkey's argument by failing to respond to it, the Court would find Jenkins' has failed to state a claim for blackmail, extortion and coercion.  Burkey is correct that private citizens cannot bring civil lawsuits for violating criminal laws unless specifically authorized.  *See Walsh v. State of Ill.*, 60 Ill. Ct. Cl. 238, 240 (2008) ("[B]y explicitly preserving complementary civil causes of actions and stating a civil injury is separate from the criminal offense, the Criminal Code is clear that no private causes of action are contained therein.").  The Court has examined the criminal intimidation statute under which blackmail, extortion and coercion is prosecuted, 720 ILCS 5/12-6(a), and has found no indication the Illinois legislature intended to create a private right of action  *See Cabrera v. World's Finest Chocolate, Inc.*, No. 04 C 0413, 2004 WL 1535850, at *7 (N.D. Ill. July 7, 2004) ("[N]o civil action is authorized under 720 Ill. Comp. Stat. 5/12-6. . . .").  *But see Becker v. Zellner*, 684

N.E.2d 1378, 1388-89 (Ill. App. Ct. 1997) (assuming without discussion that civil cause of action exists but finding defendant's conduct was not wrongful). For this reason, the Court will dismiss the claims in Count VII for blackmail, extortion and coercion with prejudice.

As for Jenkins' defamation claim, Burkey has not carried his burden of showing Jenkins filed this claim beyond the one-year statute of limitations set forth in 735 ILCS 5/13-201. As noted above, Jenkins may be entitled to the one-year savings period under Illinois law, 735 ILCS 5/13-217, following the dismissal of his case in the Eastern District of Missouri for lack of personal jurisdiction. Of course, that case must have been timely filed to begin with; the savings period cannot be used to extend the limitations period unless the period expired *during*, not before, the pendency of the earlier case. *Perkins v. Hendrickson Mfg. Co.*, 610 F.2d 469, 470-71 (7th Cir. 1979); *Bavel v. Caveness*, 299 N.E.2d 435, 438 (Ill. App. Ct. 1973) (addressing predecessor to 735 ILCS 5/13-217, "The statute in referring to a 'new' action pre-supposes an old or prior action filed within the original limitation period. . . ."). Jenkins filed his Eastern District of Missouri lawsuit on September 29, 2015. While it is true that the Second Amended Complaint pleads defamatory conduct in 2011 and 2012, it makes other allegations in support of a defamation claim without indication of when they are alleged to have occurred. Thus, it is unclear from the Second Amended Complaint whether any of the defamatory conduct Burkey is alleged to have committed occurred within a year of Jenkins' filing of his lawsuit in the Eastern District of Missouri. For this reason, the Court declines to dismiss the defamation claim in Count VII. Burkey may seek the dates of his relevant alleged conduct in discovery and may raise a limitations argument again on summary judgment, if warranted.

H.    Count VIII: Intentional Interference with Prospective Economic Advantage

In Count VIII, Jenkins alleges Burkey intentionally and unjustifiably interfered with his

ability to carry out his duties as manager of CSRESL and his receipt of compensation for performing that job. He did this, Jenkins' claims, by drafting the "Action by Majority Members of CSRESL, LLC," inducing Frausto and Christina Jenkins to sign it, and mailing it to the Nevada Secretary of State for filing.

In his motion to dismiss, Burkey argues that any action he took was on behalf of his clients Frausto and Christina Jenkins as owners of CSRESL. Thus, he believes his conduct was not directed toward a third party with whom Jenkins had a business expectancy but toward his own clients.

In response, Jenkins does not address Burkey's argument as to his prospective economic advantage interference claim. The Court construes this as an admission of the merits of Burkey's argument. Nevertheless, the Court declines to dismiss Count VIII because Burkey has not convinced the Court that Jenkins' claim cannot succeed.

Under Illinois law, the elements of a cause of action for intentional interference with prospective economic advantage are:

> (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.

*Anderson v. Vanden Dorpel,* 667 N.E.2d 1296, 1299 (Ill. 1996); *accord Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1133-34 (Ill. 2001). The business relationship with which the defendant is alleged to have interfered must have been with a third party, and the defendant's conduct must have been directed at that third party. *Boffa Surgical Grp. LLC v. Managed Healthcare Assocs. Ltd.*, 47 N.E.3d 569, 577 (Ill. App. Ct. 2015); *see Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991) (quoting Restatement (Second) of Torts § 766 (1979)

("It is well established that one who intentionally and without justification induces another to breach his contract with a third party . . . .")).

Similarly, under Nevada law, the cause of action requires:

(1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and, (5) actual harm to the plaintiff as a result of the defendant's conduct.

*Leavitt v. Leisure Sports Inc.,* 103 Nev. 81, 88, 734 P.2d 1221, 1225 (1987).

In the Second Amended Complaint, Jenkins plausibly suggests he had a reasonable expectation of continuing his business relationship with CSRESL as its manager. He further alleges facts suggesting that Burkey hoodwinked Frausto and Christina Jenkins into using their authority as controlling members of CSRESL to oust Jenkins from that position, causing Jenkins to lose any pay he would receive from his job as manager. Burkey has not adequately explained or supported with relevant legal authority why his conduct directed toward Frausto, Christina Jenkins and/or CSRESL does not qualify as conduct directed to third parties. For this reason, the Court declines to dismiss Count VIII.

I.      Count IX:  Mail Fraud

In Count IX, Jenkins alleges Burkey used the United States Postal Service to send documents described in the Second Amended Complaint as part of his wrongful activities.

In his motion to dismiss, Burkey again points that there is no civil action for a crime like mail fraud.

In response, Jenkins does not address Burkey's argument as to his mail fraud claim. The Court construes this as an admission of the merits of Burkey's argument.

Even if Jenkins had not waived any objection to Burkey's argument by failing to respond

to it, the Court would find Jenkins can state no viable claim for mail fraud.

As noted above, private citizens cannot bring civil lawsuits under Illinois law for violating criminal laws unless specifically authorized. *See Walsh v. State of Ill.*, 60 Ill. Ct. Cl. 238, 240 (2008) ("[B]y explicitly preserving complementary civil causes of actions and stating a civil injury is separate from the criminal offense, the Criminal Code is clear that no private causes of action are contained therein.").

Further, there is no federal private right of action for mail fraud because there is no express authorization in the statute or any basis for believing Congress intended to imply a private right of action. *See Thompson v. Thompson,* 484 U.S. 174, 179 (1988) (citing *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 94 (1981) (no private right of action for federal statutory violation unless Congressional intent to create one "can be inferred from the language of the statute, the statutory structure, or some other source")); *Cort v. Ash,* 422 U.S. 66, 79 (1975) (listing relevant factors for determining if there is an implied private right of action based on violation of a federal statute not expressly providing one); *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999) (holding "that Congress did not intend to create a private right of action in enacting either the mail or wire fraud statutes").

Because there is no private right of action for mail fraud, the Court will dismiss with prejudice Jenkins' attempt to plead one in Count IX.

J.      Count X:  Negligent Supervision

In Count X, Jenkins alleges a cause of action labeled "Negligent Supervision" against TLO for negligent failure to supervise Burkey, but within that count he appears to also seek to hold TLO vicariously liable for Burkey's actions within the scope of his employment.

In its motion to dismiss, TLO argues that Jenkins has not pled facts plausibly suggesting

it owed Jenkins any duty or that it knew Burkey was unfit for his position such that he was dangerous to others. Instead, TLO notes, Jenkins relies solely on Burkey's individual conduct, rather than any negligence by TLO.

In response, Jenkins does not address TLO's argument with respect to his negligent supervision claim. The Court construes this as an admission of the merits of TLO's negligent supervision argument.

Even if Jenkins had not waived any objection to TLO's argument regarding negligent supervision by failing to respond to it, the Court would find Jenkins has not pled such a claim. To prevail against an employer for negligent supervision of its employee under Illinois law, a plaintiff must show "the employer knew or should have known that its employee had a particular unfitness for his position so as to create a danger of harm to third persons and that the employer's failure to safeguard the plaintiff against this particular fitness proximately caused the plaintiff's injury." *Dennis v. Pace Suburban Bus Serv.*, 19 N.E.3d 85, 94 (Ill. App. Ct. 2014); *accord Doe v. Brouillette*, 906 N.E.2d 105, 115 (Ill. App. Ct. 2009).

Jenkins' allegations do not plausibly suggest TLO knew Burkey posed a particular danger to Jenkins by the quality of his representation of Jenkins' daughters or that TLO's failure to take action to lessen that danger caused injury to Jenkins. For this reason, the Court will dismiss the negligent supervision claim in Count X without prejudice.

However, because TLO's motion did not seek dismissal of Count X to the extent it pleads a vicarious liability claim, which is distinct form negligent supervision, *see Vancura v. Katris*, 939 N.E.2d 328, 343 (Ill. 2010) (noting an "employee's malfeasance may generally create liability for his or her employer in two ways: vicarious liability for the acts of the employee, or direct liability for the employer's own acts"), the Court will allow that claim to proceed to the

extent it seeks to hold TLO liable for the counts against Burkey that the Court has allowed to proceed.

## V.  Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** the motion to dismiss filed by Burkey and TLO (Doc. 14);

- **DISMISSES with prejudice** all claims by plaintiff Rhonda Alexandropoulos;

- **DISMISSES with prejudice** the claims by plaintiff Scott Jenkins in Counts I, II, III, IV, V, VI and IX in their entirety and in Count VII for blackmail, extortion and coercion;

- **DISMISSED without prejudice** the claims by plaintiff Scott Jenkins in Count X for negligent supervision; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

The only claims remaining in this case are Jenkins' claims in Count VII for defamation, Count VIII in its entirety, and Count X based on vicarious liability for those two claims.

**IT IS SO ORDERED.**
**DATED:  June 22, 2017**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**