UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SCOTT JENKINS and RHONDA
STEPHANIE ALEXANDROPOULOS,

    Plaintiffs,

v.

BRUCE BURKEY, TAYLOR LAW FIRM
PC, JOICE BASS, JENNIFER HOSTETLER
and LEWIS ROCA ROTHGERBER LLP,

    Defendants.

Case No. 16-cv-792-JPG-SCW

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by defendants Bruce Burkey and Taylor Law Offices, PC ("TLO"; misnamed in the Second Amended Complaint as Taylor Law Firm PC) (Doc. 77). Plaintiff Scott Jenkins has responded to the motion (Doc. 90), and Burkey and TLO have replied to that response (Doc. 91).[1]

**I.    Background**

Jenkins originally filed a nearly identical lawsuit on September 29, 2015, in the United States District Court for the Eastern District of Missouri, which described the litigation as follows:

> This litigation arises from a prior lawsuit plaintiff Jenkins filed against his daughters in Nevada to regain control of a family-owned company in Nevada (the "Nevada Lawsuit"). In that lawsuit, Jenkins' daughters retained defendants Bass

---

[1] Jenkins had filed an earlier response to the summary judgment motion (Doc. 80), but the Court struck it because Jenkins had not been given the admonition regarding responding to a summary judgment motion required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992), and *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). It then provided the required notice and allowed Jenkins to file a new response, which is the response considered in this motion. Following the original briefing, Jenkins had also attempted to file a sur-reply brief (Doc. 83), but the Court struck it because it violated Local Rule 7.1(c) prohibiting sur-reply briefs. The Court has not considered either of the stricken filings.

> and Hostetler of the Nevada law firm Lewis Roca Rothgerber Christie LLP as
> their attorneys. In addition, plaintiff Jenkins' daughters retained defendant
> Burkey of the Taylor Law Firm, P.C. in Illinois.
>
> * * *
>
> Plaintiffs have now brought a variety of claims against the named
> attorneys and law firms, which all relate to the defendants' work representing
> their clients opposite plaintiff Jenkins in the Nevada Lawsuit. These claims
> include intentional infliction of emotional distress, negligent infliction of
> emotional distress, intentional interference with a prospective economic
> advantage, defamation, negligent supervision, and breach of contract. Plaintiffs
> have also alleged that defendants committed fraud, fraudulent misrepresentation,
> conspiracy, theft, the unauthorized practice of law, illegal possession of personal
> credit file information, violating the Illinois Consumer Fraud and Deceptive
> Business Practice Act, blackmail, extortion, coercion, mail fraud, and sending
> threatening communications by mail.

Mem. & Order at 1-2, *Jenkins v. Burkey*, No. 4:15-cv-1494-SNLJ (E.D. Mo. June 21, 2016).

In an order dated June 22, 2017 (Doc. 53), the Court granted in part and denied in part the motion to dismiss filed by Burkey and TLO, leaving only three claims in this case:

- Count VII against Burkey for defamation;

- Count VIII against Burkey for intentional interference with prospective economic advantage; and

- Count X against TLO based on vicarious liability for Burkey's conduct in the foregoing two claims.

Burkey and TLO now seek summary judgment on those remaining claims.

## II. Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences

2

in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

3

## III. Facts

Viewing all the evidence and the reasonable inferences that can be drawn therefrom in Jenkins' favor, the Court finds the following relevant facts for the purposes of this motion.

Before the Nevada Lawsuit began, Jenkins was the manager of CSRESL, LLC, a Nevada limited liability company, and was authorized to act on its behalf. Burkey worked for TLO, an Illinois law firm. In 2011, Burkey began representing Jenkins' two daughters, Rebecca Frausto and Christina Jenkins (collectively, "the daughters"), in various matters, including their purported interest in CSRESL.[2]

Suspecting that Jenkins was mismanaging CSRESL and diverting company assets for his own benefit, the daughters sought to remove Jenkins as manager. In September 2011, acting on

---

[2] Jenkins takes the position in response to the defendants' summary judgment motion that Burkey did not, in fact, represent his daughters but CSRESL, the company. He supports his position with his affidavit in which he states that *he did not know* Burkey was representing his daughters. Jenkins' knowledge is irrelevant and is not sufficient to create a genuine issue of material fact about whether Burkey *actually* represented the daughters.
    Jenkins also points to Burkey's billing records indicating CSRESL, not the daughters, was his client. However, the Court record is replete with evidence showing this is not true. Burkey's letters in connection with this controversy consistently stated he was representing the daughters and reflected that he was giving them confidential legal advice and acting on their behalf, the hallmarks of an attorney-client relationship. *See Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E.2d 250 (Ill. 1982). The billing records submitted by Jenkins also support Burkey's giving confidential legal advice to and acting on behalf of the daughters. In prior representations to the Court, Burkey explained that his designation of CSRESL as his client was a means of keeping various matters in which he was representing the daughters distinct from each other for billing purposes. Jenkins himself pled in the Nevada Lawsuit that his daughters were acting "with the assistance of their non-Nevada licensed attorney," Burkey. First Am. Compl. ¶ 11 (Doc. 77-2). Furthermore, in this case, Jenkins refers to his daughters in the Second Amended Complaint as Burkey's clients (Doc. 12, ¶¶ 13, 14, 15) and testified to that effect in parts of his deposition. In addition, Magistrate Judge Stephen C. Williams found in resolving a dispute over attorney-client privilege that Burkey represented Jenkins' daughters in their individual capacities, not CSRESL (Doc. 74). Finally, in light of Jenkins' position that his daughters never had any membership or interest in CSRESL, it would be inconsistent to find that Burkey's representation of the daughters was somehow actually representation of CSRESL. In light of Jenkins' prior statements and positions and Magistrate Judge Williams' findings, the Court believes no reasonable factfinder could conclude based solely on Burkey's billing records that Burkey was *not* representing the daughters and was, in fact, representing CSRESL.

behalf of the daughters, Burkey drafted a document entitled "Action by Majority Members of CSRESL, LLC" that purported to remove Jenkins as the manager of CSRESL and replace him with Frausto. Believing that the daughters were entitled to designate the manager of CSRESL by virtue of their collective interest in the company as set forth in an unsigned operating agreement for the company (at least 98%), Burkey advised the daughters to sign the document. In December 2011, Burkey sent an Amendment of Articles of Organization to the Nevada Secretary of State indicating Jenkins was no longer CSRESL's manager. The daughters' actions were not actually effective to remove Jenkins as manager of CSRESL.

In February 2012, Burkey held a meeting with Jenkins, the daughters, and the daughters' mother (Jenkins' former wife) at which Burkey made oral statements that Jenkins believed defamed him, including a reference to a theft with which he had been charged in Colorado. After that meeting, Burkey sent a letter dated March 28, 2012, to an attorney representing Jenkins expressing doubts about the propriety of Jenkins' conduct in connection with CSRESL (Doc. 77-4 at 4-5).

Later in 2012, Jenkins and CSRESL sued the daughters in the Nevada Lawsuit over the question of who owned CSRESL and who could therefore decide who would serve as its manager. The Nevada Lawsuit pleading alleges, in pertinent part, "On December 16, 2011, defendants Christina Jenkins and Rebecca Jenkins-Frausto, with no actual or implied authority, attempted to amend the articles of CSRESL to replace Scott Jenkins as the manager of CSRESL with Rebecca Jenkins-Frausto with the assistance of their non-Nevada licensed attorney." First Am. Compl. ¶ 11 (Doc. 77-2 at 63). Burkey was not named in the pleading, but it is clear from the context and circumstances he was the "non-Nevada licensed attorney" referenced. The First Amended Complaint pled causes of action for declaratory and injunctive relief regarding the

authority to manage CSRESL, conversion of CSRESL's assets, and fraud. The daughters filed counterclaims for contrary declaratory relief and for breach of fiduciary duty against Jenkins.

In connection with the Nevada Lawsuit, Burkey sent several letters to Jenkins' attorneys regarding Jenkins and the litigation. Burkey wrote the first letter, dated April 4, 2012 (Doc. 77-4 at 10), attempting to negotiate payment of the daughters' mediation expenses. He wrote another letter, dated April 18, 2012 (Doc. 77-4 at 6), clarifying that a potential conflict of interest for Burkey did not, in fact, exist. Another letter, dated April 27, 2012 (Doc. 77-4 at 7), provided the case number for a case in Colorado involving Jenkins. Jenkins was particularly offended by another letter Burkey wrote, also dated April 27, 2012 (Doc. 77-4 at 8-9), in which Burkey referred to Jenkins as "dear old dad" and "daddy," which Jenkins found unprofessional. The final letter, dated May 14, 2012 (Doc. 77-4 at 11-12), discussed various litigation issues and positions, including a settlement proposal. Jenkins' attorneys received the letters shortly after the dates they bore, at which point they became available to Jenkins.[3] No other relevant correspondence from Burkey is in the record.

On September 16, 2014, Jenkins, CSRESL, and the daughters settled the Nevada Lawsuit. The settlement included a provision under which the daughters would purchase a parcel of CSRESL's property in Illinois by a certain date. The purchase was not concluded by that date, and the case was reopened. The reopened case was again settled, and in May 2015 the parties stipulated to dismissal of the claims and counterclaims in the Nevada Lawsuit. The settlement included a May 1, 2015, amendment to the earlier settlement ("Settlement Amendment") that included the following provision:

---

[3] Jenkins asserts in his brief that he learned of "some of the defamation issues" from the fall of 2014 to the spring of 2015, but the Court does not credit that statement because Jenkins has not supported it with affidavit testimony or documentary evidence as required by Rule 56(c). *See Timms*, 953 F.2d at 285; *Lewis*, 689 F.2d at 102.

> Mutual Releases of Claims. Except for obligations created under this Agreement . . ., the Plaintiffs [Jenkins and CSRESL] and Defendants [Frausto and Christina Jenkins] (each a "Releasing Party") each for and on behalf of himself, herself or itself and his, her or its predecessors, successors and assigns and all persons claiming by, through or under him, her or it does hereby fully, irrevocably and forever release, acquit and discharge the other Releasing Party and . . . the former and present . . . agents . . . of the other Releasing Party . . . (individually and collectively, the "Released Parties"), of and from any and all claims, damages, losses, costs, expenses, actions, causes of action, third-party actions, liabilities, debts, torts, accounts, agreements, promises, contracts, proceedings, and demands whatsoever, at law or in equity, known or unknown, whether asserted or unasserted, whether contingent or fixed, that the Releasing Party now has or may have in the future against the Released Parties, or any one or more of them, for any acts, errors, omissions, breaches of duty or conduct of any kind or description of the Released Parties, or any one or more of them, whether known or unknown to the Releasing Party on or before the Amendment Date, arising out of or in any way relating to the services performed by Scott Jenkins, Rebecca Frausto, and/or Christina Jenkins in and for the Company, the Complaint Claims . . . and any other claims which were made or that could have been made in the Lawsuit by a Releasing Party, or any one or more of them.

Settlement Amendment. § 2 (Doc. 77-2 at 108-09).

## IV. Analysis

As a preliminary matter, Burkey and TLO argue that Illinois law should apply to the remaining claims in this case because Illinois choice of law principles for tort suits lead to that conclusion. Because the application of Illinois law appears reasonable for the reasons Burkey and TLO set forth in their motion and because Jenkins does not object in his response to the application of Illinois law, the Court applies Illinois law to the remaining causes of action.

Burkey and TLO ask the Court for summary judgment on all remaining counts against them; the Court will addresses each count in turn.

### A. Count VII: Defamation

In the only remaining claim in Count VII, Jenkins claims Burkey defamed him in certain oral and written statements. The last allegedly defamatory statement Burkey made occurred in a

letter dated May 14, 2012. Jenkins believes these statements caused harm to his relationship with his daughters.

Burkey argues, among other things, that Jenkins' defamation claim is time-barred because Jenkins filed this claim beyond the one-year statute of limitations for defamation set forth in 735 ILCS 5/13-201, and is not entitled to the one-year savings period, 735 ILCS 5/13-217, to refile cases dismissed for lack of jurisdiction. In response, Jenkins asserts, but provides no proof, that he did not discover the defamatory statements until well after they were made.

The Court agrees with Burkey and will grant summary judgment in his favor on this claim. Under Illinois law, the statute of limitations for defamation claims is one year. *See* 735 ILCS 5/13-201. The last allegedly defamatory statement Burkey made was in a letter dated May 14, 2012, and received by Jenkins' counsel shortly thereafter. Jenkins did not file this lawsuit until July 14, 2016, more than four years later, which was far beyond the one-year statute of limitations.

The discovery rule does not offer Jenkins any material benefit. That rule would delay accrual of his defamation claim until he knew or reasonably should have known of the offending statement. *Peal v. Lee*, 933 N.E.2d 450, 461 (Ill. App. Ct. 2010) (citing *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 334 N.E.2d 160, 164 (Ill. 1975)). Under Illinois law, the discovery rule should not apply unless the publication of the allegedly defamatory statement was "hidden, inherently undiscoverable, or inherently unknowable." *Peal*, 933 N.E.2d at 461 (citing *Blair v. Nevada Landing P'ship*, 859 N.E.2d 1188, 1195 (Ill. App. Ct. 2006)).

Jenkins was present at the February 2012 meeting in which Burkey allegedly made the offending oral statements, so he clearly knew of them at that time. He also reasonably should

have known of the offending written statements made in the May 14, 2012, letter (and earlier letters) to his attorneys around the time the letters were received by his counsel. It is reasonable to conclude that the attorneys received the May 14, 2012, letter a few days after it was mailed, and no evidence suggests the letter was thereafter "hidden, inherently undiscoverable, or inherently unknowable." *Peal*, 933 N.E.2d at 461. Thus, the one-year statute of limitations period began to run at that time.

Jenkins is also not entitled to the benefit of the one-year savings period of 735 ILCS 5/13-217. Generally, that statute provides that a plaintiff may commence a new action within a year of dismissal of the same claim for lack of jurisdiction if the limitations period expired while the earlier case was pending. However, the savings period only applies if the limitations period expired *during*, not *before*, the pendency of the earlier case. *Perkins v. Hendrickson Mfg. Co.*, 610 F.2d 469, 470-71 (7th Cir. 1979); *Bavel v. Cavaness*, 299 N.E.2d 435, 438 (Ill. App. Ct. 1973) (addressing predecessor to 735 ILCS 5/13-217, "The statute in referring to a 'new' action pre-supposes an old or prior action filed within the original limitation period. . . .").

Here, the one-year limitations period for Jenkins' defamation claim did not expire while his case in the Eastern District of Missouri was pending. Instead, it expired around May 2013, about a year after Jenkins' attorneys received the letter with the final allegedly defamatory statement and long before Jenkins filed his September 2015 suit in the Eastern District of Missouri. Thus, Jenkins is not entitled to the savings period.

For these reasons, the Court will grant summary judgment for Burkey on the claim for defamation in Count VII and for TLO on the *respondeat superior* claim in Count X based on that defamation claim. The Court need not address the other arguments Burkey makes with respect to the defamation claim—substantial truth of the statements, no publication to a third party, and

9

release of claims in the Settlement Amendment.[4]

B. Count VIII: Intentional Interference with Prospective Economic Advantage

In Count VIII, Jenkins claims Burkey interfered with his ability to carry out his duties as manager of CSRESL and to receive compensation for performing that job when Burkey participated in trying to remove him from that position. In his motion for summary judgment, Burkey notes that Jenkins was never removed from his position as manager, so there was no interference with his prospective economic advantage. He further argues that this claim falls within the release of claims contained in the Settlement Amendment.

The Court applies ordinary contract interpretation rules to determine whether the Settlement Amendment released the claim in Count VIII. Under Illinois law, when construing a contract the Court must give effect to the intent of the parties. *Schek v. Chicago Transit Auth.*, 247 N.E.2d 886, 888 (Ill. 1969). The Court must first attempt to determine this intent solely from the contract language. *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (citing *Western Ill. Oil Co. v. Thompson*, 186 N.E.2d 285, 287 (Ill. 1962)); *Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984). It is the Court's duty to construe and enforce the contract as it was written. *Shaffer v. Liberty Life Assur. Co. of Boston*, 746 N.E.2d 285, 288 (Ill. App. Ct. 2001). If the language is unambiguous, the Court must interpret the contract as a matter of law without reference to extrinsic, or parol, evidence. *Air Safety*, 706 N.E.2d at 884. A party's particular interpretation of the terms at the time is immaterial where the terms of the contract are clear. *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 892 (7th Cir. 2004). On the other hand, if the language is susceptible to more than one meaning, then the contract is ambiguous and parol evidence may be used to determine the parties' intent. *Air Safety*, 706

---

[4] Alternatively, Burkey is entitled to summary judgment on Count VII because of the release of claims in the Settlement Amendment, discussed in the following section.

N.E.2d at 884.

The terms of the Settlement Amendment release are clear and not susceptible to more than one meaning, and under their clear meaning, Jenkins released this claim. The release is extremely broad. It covers "any and all claims . . ., known or unknown" that Jenkins had or may have in the future against his daughters, CSRESL, and their former or present agents—which includes their attorneys—for acts "arising out of or in any way relating to" services performed for CSRESL by Jenkins or his daughters, to the claims in the Nevada Lawsuit or to "any other claims which were made or that could have been made in the Lawsuit."

Under even the stingiest interpretation of the release, a claim based on Burkey's conduct in assisting the daughters in removing Jenkins as manager of CSRESL arose out of or related to the Nevada Lawsuit. The Nevada Lawsuit was in response to the daughters' attempts to remove Jenkins as manager and centered on who had the authority to make such a change. In fact, the First Amended Complaint in the Nevada Lawsuit specifically referenced the daughters' "non-Nevada licensed attorney"—Burkey—and his assistance in helping the daughters attempt to amend the organization documents of CSRESL to replace Jenkins as manager. This is exactly the conduct alleged in Count VIII of the case at bar. Furthermore, the conduct at issue in this case clearly relates to services Jenkins and his daughters were attempting to perform for CSRESL—determining the management of the company—another category of conduct for which claims were released in the Settlement Amendment. It is clear that the release therefore relieves Burkey of any liability he may have otherwise had for intentionally interfering with Jenkins' economic interests in holding the position of manager.

Jenkins argues the release does not cover Burkey. He asserts that Burkey was working for CSRESL, not his daughters, so he was not his daughters' agent covered by the release. As

discussed in footnote 2 in the Facts section of this Memorandum and Order, he is wrong. Burkey represented the daughters in their individual capacities with respect to their potential interest in CSRESL. Therefore, Burkey was their agent with respect to their efforts to oust Jenkins as manager and is covered by the release.

Jenkins also argues that, because CSRESL was dissolved in November 2014, the release could not cover his intentional interference with prospective economic advantage claim against Burkey. He appears to be taking the position that because CSRESL was dissolved before the May 1, 2015, Settlement Amendment, the Settlement Amendment had no effect as to CSRESL and its agents, including Burkey (assuming he represented CSRESL). As suggested, this argument depends on Burkey's being CSRESL's attorney, which, as explained above, he was not. Furthermore, even if Burkey had been CSRESL's attorney rather than the daughters', he would have been covered by Jenkins' release of claims against the former agents of CSRESL under the plain terms of the release. Jenkins' position has no merit.

Jenkins also suggests the Settlement Amendment is void because the daughters' Nevada lawyers who negotiated it could not represent parties in a mediation concerning Illinois property. This contention is unsupported by citation to relevant evidence or caselaw and is therefore waived. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (arguments that are "underdeveloped, conclusory, or unsupported by law" are waived).

Finally, Jenkins suggests he should not be bound by a release of Burkey because he did not know Burkey was covered by the terms of the release. This argument has no merit under the fundamental principles of contact interpretation under Illinois law. As noted above, a party's particular interpretation of an agreement is immaterial where the terms of the contract are clear, as they are here. *See PPM Fin.*, 392 F.3d at 892. Under the clear terms of the Settlement

Agreement as negotiated by Jenkins' counsel in the Nevada Lawsuit, Jenkins released his claims against his daughters' attorney. His claim now that he did not know this included Burkey is of no avail.

For these reasons, the Court will grant summary judgment for Burkey on Count VIII and for TLO on the *respondeat superior* claim in Count X based on that intentional interference with prospective economic advantage claim. The Court need not address the other argument Burkey makes with respect to Count VIII—no breach or termination of the business expectancy.

**V.     Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** the motion for summary judgment on Counts VII, VIII and X filed by Burkey and TLO (Doc. 77); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  May 2, 2018**

                                            s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**