**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 7, 2018[*]
Decided December 12, 2018

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

**Before**

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-2222

| | |
|---|---|
| SCOTT JENKINS,<br>          *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 16-cv-792-JPG-SCW |
| BRUCE BURKEY, et al.,<br>          *Defendants-Appellees*. | J. Phil Gilbert,<br>*Judge*. |

## O R D E R

This lawsuit is the latest stage in a bitter dispute over a family business. Scott Jenkins, a Missouri citizen, created and managed a Nevada limited-liability company. He gave his two daughters, Illinois citizens, majority shares. When the daughters tried to remove Jenkins from management, he sued them in Nevada, and they hired lawyers from Nevada and Illinois to represent them. After settling his suit, Jenkins brought *this* diversity-based suit against his daughters' lawyers for torts he says they committed in

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

the Nevada suit. The district court dismissed the case. Because it correctly reasoned that it had no personal jurisdiction over the Nevada lawyers, and the settlement agreement from the Nevada suit barred Jenkins's claims against the Illinois lawyers, we affirm.

Fearful that Jenkins was mismanaging the company, Jenkins's daughters hired two sets of lawyers. First, they hired Bruce Burkey, an Illinois attorney. Burkey filed a document with the Nevada Secretary of State to remove Jenkins as manager. That filing spurred Jenkins to start litigation to determine who owned the company. The daughters then retained two Nevada-licensed lawyers to represent them in court.

The Nevada suit eventually settled. Jenkins, represented by counsel, and his daughters tried to settle in 2014, but could not. A year later, the parties reconvened. Jenkins was unrepresented this time, but they nonetheless reached and signed an agreement in May 2015. The agreement included mutual releases. Under the releases, Jenkins, his daughters, and the company released each other and their "agents" from all claims "arising out of or relating to" the Nevada lawsuit.

Following the settlement, Jenkins brought this action. He accuses his daughters' lawyers and their law firms of tortious conduct in Nevada. The district court dismissed Jenkins's claims against the Nevada lawyers for lack of personal jurisdiction because they performed all their work in Nevada and had no relevant contacts with Illinois. The judge also entered summary judgment in favor of Burkey (the Illinois lawyer) and his firm because the Nevada suit's settlement agreement barred claims against them.

On appeal, Jenkins first challenges the district judge's dismissal of his claims against the Nevada lawyers for lack of personal jurisdiction. He argues that they developed minimum contacts with Illinois by deposing him in Illinois during this suit (not the Nevada suit) and revealing the confidential Nevada settlement. This argument has several flaws. First, Jenkins has forfeited it because he did not timely raise it in the district court. *See United States v. Hamad*, 809 F.3d 898, 904 (7th Cir. 2016). Second, only the events that Jenkins seeks to litigate in this suit are relevant to personal jurisdiction, and they all occurred in Nevada, not Illinois. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("[S]pecific [personal] jurisdiction is confined to the adjudication of issues deriving from … the very controversy that establishes jurisdiction." (internal quotations omitted)); *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S.Ct. 1773, 1780 (2017). Third, only the forum contacts that the defendant initiates are relevant for personal jurisdiction. *See Walden v. Fiore*, 571

U.S. 277, 284, 286 (2014); *Brook v. McCormley*, 873 F.3d 549, 552–53 (7th Cir. 2017). Yet Jenkins, by filing this suit, initiated the lawyers' appearance in Illinois.

Next, Jenkins challenges the district court's dismissal of his claims against Burkey. He argues that the settlement agreement released his daughters and their agents, but not Burkey, from his claims because, he asserts, Burkey represented the company. The district judge, however, found that Burkey represented the daughters, and on this record that finding is not clearly erroneous. In any case, the releases covered all parties—Jenkins, the daughters and the company—plus their agents, so Jenkins released Burkey regardless of whom Burkey represented. Jenkins responds that he is not bound by the mutual releases because he was not represented by counsel in their negotiations and did not realize that the mutual releases extended to the parties' agents. Courts, however, will enforce freely entered contracts as long as "they are not unconscionable." *St. Mary v. Damon*, 309 P.3d 1027, 1035 (Nev. 2013) (quoting *Rivero v. Rivero*, 216 P.3d 213, 226–27 (Nev. 2009)). Jenkins's lack of representation and his failure to read the contract do not reach this threshold. *See U.S. Home Corp. v. Michael Ballesteros Trust*, 415 P.3d 32, 40–41 (Nev. 2018).

AFFIRMED